# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1848, AT LENOX.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY,
Hon. CHARLES E. FORBES, } Justices.
Hon. THERON METCALF,

## Seth King & others *vs.* Ralph Little & others.

Ancient books, purporting to be the records of the Lower Housatonic Proprietary, produced by the clerk, were held admissible as evidence, without proof of the original and continued organization of the proprietary.

Office copies of registered deeds, purporting to have been executed in 1736 and 1742, are admissible in evidence, without other proof.

M. K., in 1736, by a deed, which was absolute upon its face, conveyed an estate to P. L.; who, in 1742, conveyed the same estate to R. K., by a deed, in which it was recited, that R. K. had purchased M. K.'s right of redemption therein: it was held, that this recital was no ground for presuming that the first deed was a mortgage.

B. K. devised to the lawful heirs of his son H. K. all the lands and real estate, situated in the county of Berkshire, which descended to him as the heir at law of his father B. K.: One of the heirs dying and her share descending to her father H. K., he made a conveyance to S. K. in the following terms, namely, "all right, title, and interest, that I have or ought to have to a tract or parcel of land

King & others *v.* Little & others.

situated in Great Barrington, *being the same that was bequeathed by my father B. K.,* *deceased, to my children :"* It was held that these terms were not sufficient to pass an estate in Sheffield, although B. K. possessed an estate there, which was included in the devise to the children of the grantor.

THIS was an action of trespass, for breaking and entering the plaintiffs' close, in Sheffield, and cutting wood and timber thereon. The defendants pleaded the general issue, and filed a specification of defence, claiming title in themselves to the lands described in the writ.

The plaintiffs claimed the lands in question, under a location or assignment thereof, on the 8th of June, 1832, by the Lower Housatonic Proprietary, to Elizabeth King, Frederick King, Harriet King, and Jane King, grandchildren and devisees of Bohan King, on the original right of one Moses King.

At the trial, which took place in this court, before *Dewey,* J., at the last May term, the plaintiffs first proved the alleged acts of trespass, and, then, in order to establish the right of Moses King, and the transmission of it to them, introduced evidence, from which the following facts appeared.

John Granger, one of the original proprietors of the town of Sheffield, conveyed his whole interest in lands therein to Moses King, his heirs and assigns, by a deed dated July 27th, 1733, duly acknowledged and recorded, in which the estate conveyed is described as the sixty-second part of the township, a part of which was already located, " together with all after divisions that can or may arise on the same grant."

Moses King, by his deed dated June 29th, 1736, which was duly acknowledged and recorded September 3d, 1736, conveyed certain parcels of land particularly described, " together with the right of the said Moses King in the township of Sheffield, being four hundred and six acres of land," to Philip Livingston, his heirs and assigns.

Philip Livingston, by his deed dated March 5th, 1742–3, duly acknowledged and recorded, reciting the conveyance to him, as above mentioned, by Moses King, and the receipt of a certain sum of money paid by Reuben King, " who hath

37*

purchased said Moses King's right of redemption in said lands and premises," conveyed the same premises and right to Reuben King, his heirs and assigns.

From Reuben King, the estate descended to his son Bohan King, by whom it was devised to his grandchildren, in the following terms: "I give and devise to the lawful heirs of my son Henry King, all the lands and real estate, situated in the county of Berkshire, in this state, or elsewhere, that have descended to me, as heir at law to the estate of my father Reuben King, formerly of Great Barrington, in the county of Berkshire, deceased. And I also give and devise to the lawful heirs of my said son Henry, all such lands and real estate, as I purchased of my nephew and niece, Ephraim and Sally Wells, of Greenfield, in the county of Franklin, being lands inherited by them from their grandfather Reuben King, and situated in the county of Berkshire aforesaid."

At the time of the decease of Bohan King, in the spring of 1823, the lawful heirs of the testator's son Henry King, were the four children of the latter already named, Elizabeth, Frederick, Harriet and Jane. Elizabeth married Sherman Day, one of the plaintiffs. Harriet died in 1833, or 1834, unmarried and without issue. Her share of the estate descended to her father Henry King, as her heir at law, by whom a deed was made thereof to Seth King, one of the plaintiffs. By this deed, the grantor remised, released, and forever quitclaimed to the grantee, his heirs and assigns, in the following terms: "all right, title, and interest, that I have or ought to have to a tract or parcel of land, situated in Great Barrington, in the county of Berkshire, being the same that was bequeathed by my father Bohan King, to my children."

It appeared from the records of the Lower Housatonic Proprietary, that the lands described in the writ were located as above mentioned upon the right of Moses King; that Moses King was one of the original proprietors, with the right of four hundred and sixty-six acres, to which were afterwards added one hundred acres more; that, previous to the location in June, 1832, to the devisees of Bohan King, loca-

tions had been made to various persons on the right of Moses King, which were more than sufficient to exhaust the whole five hundred and sixty-six acres; but that, excluding from this computation all the locations made since the deed to Livingston (June 9th, 1736), except such as were laid to Bohan King and his devisees (there were no locations to Livingston or to Reuben King), there would be more than enough left of the right of Moses King, to warrant the location, under which the plaintiffs claimed.

The records above mentioned were contained in certain ancient books, purporting to be the records of the Lower Housatonic Proprietary, which were produced by Edward P. Woodworth, who stated, that he was and had been the acting clerk of the proprietary from January 1st, 1844, to the present time. A record of his appointment was also shown. Previous to the appointment of Mr. Woodworth, it appeared, that, for fifty years, Silas Kellogg had been chosen and acted as clerk of the proprietary.

The defendants objected, *first,* to the admission of the books of record, on the ground, that no competent evidence had been previously given of the original and continued organization of the proprietary, and of the election and qualification of Kellogg and Woodworth, as clerks; *second,* to the admission of certified copies of deeds, from the registry of deeds, which were admitted in proof of the conveyances from John Granger to Moses King, from Moses King to Philip Livingston, and from the latter to Reuben King, on the ground, that such deeds did not appear to have been legally executed, acknowledged and recorded; *third,* that the deeds above mentioned and the devise from Bohan King were insufficient to prove a conveyance of the whole original right and title of Moses King to the plaintiffs; and, *fourth,* that the recital in the deed from Philip Livingston to Reuben King, that the latter had purchased Moses King's " right of redemption in the lands and premises " therein mentioned, showed that the deed from Moses King to Philip Livingston was a mortgage, and, therefore, that the locations made on

his right, subsequent to such conveyance, were properly made.

The defendants' objections being overruled, they introduced in evidence, to prove a title in themselves, a warranty deed of the premises in question, from Jedediah Burrill to them, dated April 27th, 1846; and also a schedule of the locations on the right of Moses King, as already stated, extracted from and verified by the records of the proprietary and the testimony of Woodworth the clerk.

The jury returned a verdict for the plaintiffs. If the rulings of the presiding judge were right, and, upon the case as above presented, the plaintiffs are entitled to recover, judgment is to be entered for them on the verdict; otherwise, the verdict is to be set aside, and a new trial granted.

On the hearing in this court, the defendants objected further, that the deed from Henry King to Seth King, one of the plaintiffs, did not convey any estate in Sheffield, but only in Great Barrington; and, also, that by the terms of the devise, introduced by the plaintiffs, from Bohan King to his grandchildren, it appeared, that Bohan King was not the sole heir of Reuben King, but that the latter had a daughter, whose issue survived him; that Bohan King was conse quently entitled to no more than a moiety of the proprietary right of Moses King; and that such moiety had been wholly exhausted by the locations admitted to have been rightly made to Bohan King and his devisees, previous to June 8th, 1832.

*I. Sumner*, for the plaintiffs.

*B. Palmer*, for the defendants.

DEWEY, J.   1. The ancient books, purporting to be records of the Lower Housatonic Proprietary, were properly admitted as evidence, without any further proof of the original and continued organization of the proprietary. This species of evidence is that usually introduced in tracing ancient titles, and has been long sanctioned by this court.

2. The original right of John Granger appears, from the evidence, to have been legally transferred to Moses King.

**3.** The right of Moses King, by virtue of the deeds of Moses King to Philip Livingston, and of Philip Livingston to Reuben King, became vested in the latter. These deeds were properly authenticated to make them competent evidence. They operated, as against the grantor and his heirs, to convey all the right in the premises, which Moses King had therein at the time of the execution of the deed from him to Philip Livingston, and, as against all persons, from the time of the registry thereof, on the 3d of September, 1736.

The question, whether the right of Moses King, to make locations in the proprietary, had been exhausted by locations made in his name, and under his authority, must be settled by reference to the locations made prior to his deed to Philip Livingston ; for, after that conveyance, he ceased to have any right of further location.

There is nothing in the case, to show that this deed was a mortgage, except the recital in the deed from Livingston to Reuben King, which assumes that the latter was already the holder of Moses King's equity of redemption in the premises. We do not perceive that there is any thing, which affects the case, in the suggestion of the defendants, that the deed from Moses King was a mortgage.

The right of Reuben King, on his decease, descended to his heirs at law. By the parol evidence, given at the trial, it appeared, that Bohan King was the son of Reuben King, and, of course, an heir at law ; and, for the purposes of the trial, it was assumed, that he was the sole heir. But, it is now objected, that it is apparent from the documentary evidence put into the case by the plaintiffs, to show their own title, namely, the will of Bohan King, that there were two heirs to the estate of Reuben King, he having also a daughter whose issue survived him. No deed or title is shown by the plaintiffs from those thus entitled to a moiety of Reuben King's estate. This objection is now relied upon, and, as it is open to the defendant, there must be a new trial ; and the plaintiffs will then have an opportunity to supply the defect in their title, if they have any conveyance from the coheirs of Reuben King.

Without such title, and supposing Bohan King only entitled to one half the estate of Reuben King, the plaintiffs had exhausted their whole right to make locations, before the 8th of June, 1832, when the location was made, which is the present subject of controversy. On the other hand, if the plaintiffs succeeded to the entire right of Reuben King, it would seem, from the book of locations, that they had not exhausted their right prior to that time. Upon that point, however, it will be open to either party, on the new trial, to add to the former evidence any further proof which they may have to present.

5. We perceive no objection to the children of Henry King claiming title, under the clause " to the lawful heirs of my son Henry King," to the estate given them by the will of Bohan King, so far as he was the lawful owner. In the absence of any proof that he had acquired the title of his coheir, his interest therein, as already suggested, must be taken to be a moiety only.

6. Seth King, one of the plaintiffs, was not a child of Henry King, and does not derive his title directly as devisee under the will of Bohan King. It seems that Harriet King, a child of Henry King, and one of the devisees of Bohan King, died in 1834, without issue and unmarried, and, upon her decease, her interest in the premises in controversy passed by the statute of descents to her father, as sole heir at law. Her father, Henry King, on the 2d of June, 1837, executed a deed, of which a copy is in the case, to Seth King, releasing to him, his heirs and assigns, " all right, title, and interest, that I have or ought to have to a tract or parcel of land situated in Great Barrington, being the same that was bequeathed by my father Bohan King, deceased, to my children."

The title acquired under this deed is the only title of Seth King to any interest in the premises in question. The land, which is the subject of the present action, lies wholly in the town of Sheffield, and it is objected, on the part of the defendants, that the effect of the conveyance from Henry

King to Seth King is only to release his interest in lands in Great Barrington. Such certainly is the language of the deed, and the locality is fixed by the terms of the deed. It is said in answer to this, however, that the concluding part of the description, " being the *same* that was bequeathed by my father Bohan King to my children," will extend the conveyance so as to embrace all the land so bequeathed by Bohan King. This construction, we think, cannot be given to the latter clause ; which has an appropriate application to the premises conveyed, if they only include the part of the lands bequeathed, that lies in Great Barrington. They were thus bequeathed. The grantor having distinctly named the town of Great Barrington, as the town in which the lands conveyed were situate, we do not feel authorized to give effect to the conveyance as a deed of lands in Sheffield. As the right of Seth King, to join in this_action, fails to be established, it will be necessary for the plaintiffs to amend their writ, in this respect, before proceeding to trial.

*Verdict set aside and new trial ordered.*